UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COLEMAN TAVON EDWARDS,

    Petitioner,

v.                                                                                                         Case No. 2:08-cv-303
                                                                              HON. ROBERT HOLMES BELL

GREG MCQUIGGIN,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner Coleman Tavon Edwards filed this petition for writ of habeas corpus challenging his conviction for assault with intent to commit murder, resisting and obstructing a police officer causing a serious injury, and felony firearm. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner asserts the following claims:

I. Petitioner's conviction should be reversed because there was insufficient evidence to find for the conviction of assault with intent to murder.

II. The trial court violated Petitioner's state and federal constitutional rights to equal protection and a jury drawn from a cross-section of the community. U.S. Const. Am. VI, XIV.

III. Petitioner's conviction must be reversed because it was against the great weight of the evidence.

IV. The trial court violated Petitioner's due process right to a trial by an impartial jury by permitting jurors to submit questions for witnesses during the trial.

V. Petitioner's federal and state constitutional rights to the effective assistance of counsel and a fair trial were violated where, for the numerous reasons set forth, he was prejudiced by his lawyer's failure to perform at an objective standard of reasonable competence. U.S. Const. Am. VI, XIV; Mich. Const. Art. I, Sec. 17, 20.

VI. Petitioner was denied his state constitutional right to appeal and his state and federal constitutional rights to due process, equal protection, and/or the effective assistance of appellate counsel, and thus his case should be treated as an appeal of right, or in the alternative he has shown "good cause," as required by M.C.R. 6.508(D)(3)(A), for the failure to allege the presently raised grounds for relief on direct appeal.

VII. Petitioner's motion for reconsideration demonstrated a palpable error by which the Court and the parties were misled and a different disposition of the motion would have resulted from correction of the error, as required under M.C.R. 2.119(F)(3).

VIII. The trial court lacked valid subject matter jurisdiction where a felony complaint was never filed and Petitioner was bound over for trial without probable cause, absent any filing of a complaint, thus violating Petitioner's state and federal constitutional right to due process. XIV Amendment U.S. Const.; Art. 1, Sec. 17 Mich. Const. 1963.

This case arose when Petitioner shot Michigan State Police Trooper Timothy Slais as he tried to remove Petitioner from the rear seat of a parked vehicle. On September 17, 2003, following a jury trial, Petitioner was convicted of assault with intent to commit murder, resisting and obstructing a police officer causing a serious injury, and felony firearm. Petitioner filed a claim of appeal as of right with the Michigan Court of Appeals. In September 2004, Petitioner filed a Brief on Appeal with the Court of Appeals, in which he only challenged his assault conviction by raising

a sole issue, Claim I above. On August 9, 2005, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's conviction for assault with intent to commit murder. In September 2005, Petitioner filed an application for leave to appeal with the Michigan Supreme Court, appearing to raise the same sole issue he previously presented to the Court of Appeals. On November 29, 2005, the Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. On June 21, 2006, Petitioner filed a motion for relief from judgment with the Berrien County Circuit Court under MCR 6.508(D) raising five issues, Claims II through VI above. At the same time, Petitioner also filed with the Circuit Court a motion to dismiss for lack of subject matter jurisdiction, which was denied on December 8, 2006. On September 29, 2006, the Berrien County Circuit Court denied Petitioner's motion for relief from judgment. Petitioner subsequently filed a motion for reconsideration, which was denied on June 5, 2007. Petitioner then filed with the Michigan Court of Appeals two separate delayed applications for leave to appeal challenging the Circuit Court's denial of his motion for relief from judgment and his motion to dismiss for lack of subject matter jurisdiction. The Michigan Court of Appeals denied both applications for leave to appeal because Petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is

whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

First, Petitioner argues that there was insufficient evidence to support his conviction for assault with intent to commit murder. The Michigan Court of Appeals rejected this claim, stating that:

> We review de novo challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.
>
> Edwards argues that his assault conviction should be reversed because there was insufficient evidence to find that he had the specific intent to kill Slais. The elements of the crime of assault with intent to murder are: (1) an assault; (2) with an actual intent to kill; (3) which, if successful, would make the killing murder. Each element of the offense, including the intent to kill, may be proven by circumstantial evidence and reasonable inferences arising from the evidence. "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient."
>
> Here, Edwards testified that the shooting occurred accidentally. However, he also admitted that he was shoving the gun into the seat

> with his right had when the shooting occurred, and that his finger was on the trigger at the time. This evidence supports a finding that, in the position the two men were in at the time, Edwards would have had to reach around his own body with his right arm and place the gun against Slais' left arm in order to effectuate the wounds that Slais received. The location of the wounds and the circumstances of the offense support the prosecutor's position that Edwards fired deliberately. This deliberate action supports a conclusion that Edwards intended to kill the trooper. The prosecutor was not required to disprove Edwards' assertion that the gun accidentally discharged. Under these circumstances, we conclude that the prosecutor provided adequate support for Edwards' assault conviction.

Michigan Court of Appeals' Opinion, Docket #18, at 2-3.

A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir.2008) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)). In a habeas proceeding, however, the court cannot simply conduct a de novo review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA. Petitioner can be granted habeas relief only if the Michigan Court of Appeals unreasonably applied the *Jackson* standard. *See Getsy v. Mitchell,* 495 F.3d 295, 315-16 (6th Cir.2007) (en banc) (whether the petitioner is entitled to habeas relief ultimately depends on whether the state court's denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.). The court's task is "to determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Petitioner committed the essential element of the crimes charged beyond a reasonable doubt. *See Nash v. Eberlin,* 258 Fed. Appx. 761, 765 (6th Cir. 2007).

When reviewing whether the state court's determination was "objectively unreasonable," the court must engage in a two-step analysis. First, the court must ask whether the evidence itself was sufficient to convict under *Jackson.* The inquiry ends if it is determined that there was sufficient evidence to convict Petitioner. If the court finds that the evidence is insufficient to convict, it must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *Id.* The law therefore "commands deference at two levels." *Tucker,* 541 F.3d at 656.

Here, viewing all of the evidence in a light most favorable to the prosecution, the specific testimony and evidence presented at trial sufficiently established that a reasonable trier of fact could find beyond a reasonable doubt that Petitioner is guilty of assault with intent to commit murder. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner alleges various violations of his federal constitutional rights in Claims II, III, IV, V, VII and VIII. Respondent contends that all of these claims are procedurally defaulted as a matter of law since Petitioner failed to present them to the Michigan Court of Appeals during his direct appeal. When a state-law default prevents further state consideration of a federal issue, the federal courts are ordinarily precluded from considering that issue on habeas corpus review. *See Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). The Sixth Circuit applies a four-part test to determine whether a claim is procedurally defaulted: (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the

petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met, the petitioner must demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). There may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002). A petitioner may also excuse a default by making a colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). This exception is reserved for a very narrow class of cases, based on a claim of "new reliable evidence." *Schlup*, 513 U.S. at 315, 324.

Here, Petitioner attempts to show "cause" for the procedural default of Claims II throughV by arguing through Claim VI that he received ineffective assistance of counsel on direct appeal. Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel...does not and will not excuse a procedural default." *McCleskey v. Zant,* 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier,* 477 U.S. 478, 486-488 (1986). To the extent that petitioner attempts to establish cause to excuse his procedural default by claiming that his appellate counsel was ineffective for failing to raise his claims in his direct appeal, he does not do so. A criminal defendant does not have "a constitutional right to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a

matter of professional judgment, decides not to present those points." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). The Supreme Court has also held that "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." *Id.* at 754.

The choice regarding which issues to pursue on appeal is a strategic one that is "properly left to the sound professional judgment of counsel." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir. 1990). The Supreme Court explained: "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-752 (1983)).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by failing to raise the claims in his appeal. Appellate counsel raised a substantial, non-frivolous allegation, Claim I, on direct appeal to the Michigan of Appeals, which concerned the sufficiency of the evidence presented at trial. Moreover, none of Claims II through IV raised by petitioner in his post-conviction motion to the Circuit Court were obvious from the trial court record and would have resulted in a reversal on appeal. *Mead v. Lavigne,* 265 F. Supp 2d 849, 870 (E.D. Mich. 2003). By choosing to present the specific issue that he did, appellate counsel made a reasonable choice to present the allegation that he believed had the best chance of succeeding. Accordingly, Petitioner's sixth claim of ineffective assistance of counsel lacks merit, and consequently, cannot serve as cause for the procedural default of Claims II through V. Furthermore, Petitioner cannot establish actual prejudice because the allegations lack merit.

In Claim II, Petitioner contends that his federal constitutional rights to equal protection were violated because the trial jury was not drawn from a cross-section of the community.

However, in denying Petitioner's motion for relief from judgment, the Berrien County Circuit Court found that the claim was without merit:

> Defendant correctly asserts that he has a constitutional right to a jury drawn from a venire representative of a fair cross-section of the community in which the case is tried. *Duren v Missouri*, 439 US 357; 99 S Ct 664; 58 LEd2d 589 (1979). According to Duren, a prima facie violation of this Sixth Amendment right consists of the following elements:
>
>> (1) that the group alleged to be excluded is a **"distinctive" group** in the community; (2) that the representation of this group in venires from which juries are selected is **not fair and reasonable** in relation to the number of such persons in the community; and (3) that this under-representation is due to **systematic exclusion** of the group in the jury-selection process. *Duren, supra* at 364, emphasis added.
>
> Defendant asserts that African Americans are a distinctive group in the Berrien County community, and that representation of African Americans on juries in Berrien County is not fair and reasonable in relation to the number of African Americans in Berrien County. Specifically, Defendant asserts that, out of all the prospective jurors, only three were African American. Even assuming arguendo that Defendant can meet the first two prongs of the *Duren* test, Defendant offers no evidence that the jury selection process in Berrien County results in systematic exclusion of African Americans.
>
> Defendant asserts that he is entitled to an evidentiary hearing on the element of systematic exclusion under *People v Guy*, 121 Mich App 592 (1982). However, the Michigan Court of Appeals in *Guy* referred to *Duren*, and observed that
>
>> To constitute "systematic exclusion," under-representation of the distinctive group would have to be "inherent" to the process utilized . . . . A dictionary definition of "inherent" is "existing in something as a natural, inseparable quality or characteristic". . . . We are unable to perceive of any kind of evidence which would establish discrimination on the ground of race or color to be an inseparable, basic characteristic of a procedure

- 10 -

> involving random selection of veniremen from registered voter's lists, when race or color is not the subject of inquiry during the process. *Guy, supra* at 600.
>
> Jurors in Berrien County are selected randomly from an annual list of citizens within Berrien County who hold either a Michigan Driver's License or a Michigan Identification Card. Like the registered voters list mentioned in *Guy*, race and color are not subjects of inquiry during the process. The fact that there were only three potential African American jurors in this particular case is not indicative of a jury selection process that is, at all times, exclusionary. An isolated incident of under-representation, assuming that is the case here, is not a Sixth Amendment violation. There is no evidence that African Americans are systematically excluded as jurors in Berrien County.
>
> Because Defendant has proffered no evidence that will meet the third prong of the *Duren* test, appellate counsel did not act unreasonably in choosing not to raise this issue on appeal. Therefore, Defendant has failed to establish good cause for failing to raise this issue on appeal, and this Court may not properly grant relief on this basis.

Berrien Circuit Court Opinion, Docket #23, at 4-5.

Petitioner contends in Claim III that the jury's guilty verdict was against the "great weight of the evidence." In denying Petitioner's motion for relief from judgment, the Berrien County Circuit Court found that the aforementioned allegation was without merit under state law.

In Claim IV Petitioner maintains that the trial court violated his federal due process rights by an impartial jury by permitting jurors to submit questions for witnesses during the trial. In denying Petitioner's motion for relief from judgment, the Berrien County Circuit Court found that the aforementioned allegation lacked merit:

> In this case, there is no evidence from the record that the questions submitted by the jurors were improper. The questions the jury asked Defendant were of a factual nature. Specifically, the jury wanted to know if there was a safety switch on Defendant's gun, and, if so, what position the switch was in. The jury also wanted to know where Defendant got the money to pay for the gun, why the gun was pointed backwards at the police officer, and how long Defendant's struggle

> with the police officer lasted. All of the questions submitted to Defendant by the jury were first screened by the Court. There is no evidence that the trial court abused its discretion by allowing these questions.
>
> Because there is controlling Michigan law on this issue and no evidence of impropriety in the questions asked by the jury, appellate counsel did not act in an objectively unreasonable manner in not raising this issue in Defendant's appeal of right. Therefore, Defendant has not established good cause for failing to raise this issue on appeal, and is not entitled to relief from judgment based on this claim.

Berrien Circuit Court Opinion, Docket #23, at 7.

Petitioner alleges in Claim V that his trial counsel rendered constitutionally ineffective assistance in a variety of ways. Again, denying Petitioner's motion for relief from judgment, the Berrien County Circuit Court rejected that claim because it was groundless:

> The first error Defendant asserts against trial counsel is failure to file sufficiently broad discovery requests, such that trial counsel failed to adequately prepare and investigate Defendant's case and, as a result of inadequate preparation, failed to present a substantial defense. Inadequate preparation and investigation may, in certain cases, amount to ineffective assistance of counsel. See *People v Caballero*, 184 Mich App 636, 640-642 (1990); and *People v Storch*, 176 Mich App 414, 423-426 (1989).
>
> Defendant cites *Kimmelman v. Morrison*, 477 U.S. 365; 106 S. Ct. 2574; 91 L. Ed.2d 305 (1986), as authority that failure to conduct adequate pretrial discovery may amount to inadequate preparation and ineffective assistance of counsel. In *Kimmelman,* counsel's failure to request any discovery from the prosecution left him unaware that the police had seized a sheet containing evidence of the charged rape from the defendant's apartment. Counsel then failed to file a timely motion to suppress the illegally seized evidence. The Supreme Court found that counsel's assistance was constitutionally deficient, but that there was insufficient evidence to find that the defendant had been prejudiced by counsel's omissions. *Id.* at 326-327, 390-391.
>
> The present case can be distinguished from *Kimmelman* in one crucial aspect: Defendant has not stated what specific evidence might have been discovered or what substantial defense Defendant was deprived of by trial counsel's alleged failures. Instead, Defendant contends that

- 12 -

trial counsel's "failure to make a general discovery request left [trial counsel] ignorant to a number of crucial deficiencies in the prosecutor's case." Defendant does not state with particularity what those deficiencies were. Defendant also contends that "adequate discovery would have led to the realization that evidence was missing." Again, Defendant does not state with specificity what evidence was missing or how that missing evidence would have provided him with a substantial defense. Defendant has not established that trial counsel's discovery methods were objectively unreasonable.

The second error Defendant asserts against trial counsel is that trial counsel should have moved for a directed verdict at the conclusion of trial and before the proofs were submitted to the jury. Trial counsel moved for a Directed Verdict of Acquittal, pursuant to M.C.R. 6.419, after the jury had rendered its verdict. Regarding motions for directed verdict brought before submission of the case to the jury, M.C.R. 6.419(A) provides, in part, "If the defendant's motion is made after the defendant presents proofs, the court may reserve decision on the motion, submit the case to the jury, and decide the motion before or after the jury has completed its deliberations." Thus, even if trial counsel had filed the motion before the jury rendered its verdict, it would have been within the court's discretion to submit the case to the jury before ruling on the motion. Defendant has not stated any reason why trial counsel's decision to move for directed verdict after jury deliberations was anything but sound trial strategy. Defendant has also not established that a mere difference in timing would, with reasonable probability, have changed the Court's ultimate determination on the motion.

Defendant next asserts that trial counsel erred in allowing stipulated testimony to be admitted against Defendant. Specifically, Defendant argues that trial counsel should have objected to the testimony of Mr. Cheba Self, given at the preliminary examination, from being read into the record at trial. Defendant asserts that trial counsel failed to investigate the availability of this witness for trial, and that the absence of Mr. Self at trial allowed the prosecution's theory to go unchallenged. Defendant claims that Mr. Self is the only witness who could have corroborated Defendant's testimony.

Defendant does not specify how Mr. Self's testimony at trial would have differed in any material way from his testimony at the preliminary examination. A reading of Mr. Self's testimony as given at the preliminary examination, compared with Mr. Self's testimony as read into the record at trial, reveals that the transcript read into the

- 13 -

>record contains the same information as the live testimony. Further, a reading of Defendant's own testimony at trial, reveals no great inconsistencies with Mr. Self's testimony. Defendant has pointed to no additional facts or circumstances about which Mr. Self could have testified that would have resulted, with reasonable probability, in a different outcome at trial. Defendant has not established that allowing Mr. Self's testimony to be read into the record, rather than calling him in person, was anything but sound trial strategy that did not prejudice the defense.
>
>Defendant further asserts that trial counsel erred in allowing the Court to permit jurors to submit questions to witnesses during the trial. As discussed above, there is controlling Michigan law on this issue, (*Heard*, *supra*), and no evidence of impropriety in the questions asked by the jury. It follows that trial counsel's actions did not fall below an objective standard of reasonableness in not objecting to the questions submitted to witnesses by the jury.
>
>Finally, Defendant argues that the cumulative effect of the alleged unreasonable actions of trial counsel denied Defendant of his right to effective assistance of trial counsel. Indeed, *People v. Kvam*, 160 Mich. App. 189, 201 (1987), states, "Although a single error in a case may not necessarily provide the basis for reversal, it is possible for the cumulative effect of a number of minor errors to require reversal." Because the Court finds that none of the failings alleged by Defendant were, in fact, unreasonable errors by trial counsel, the cumulative effect is that Defendant did receive effective assistance of trial counsel. Therefore, Defendant's appellate counsel did not act in an objectively unreasonable manner in failing to bring this issue before the Court of Appeals.

Berrien Circuit Court Opinion, Docket #23, at 8-11.

Hence, the Circuit Court explicitly found that Petitioner failed to demonstrate that he would have been successful on direct appeal to the Michigan Court of Appeals on Claims II through V but for appellate counsel's failure to bring forth those claims.

Petitioner contends in Claim VII that his motion for reconsideration demonstrated a palpable error by which the court and the parties were misled and a different disposition of the motion would have resulted from correction of the error, as required under MCR 2.119(F)(3). In

Claim VIII Petitioner maintains that the trial court lacked valid subject matter jurisdiction where a felony complaint was never filed and Petitioner was bound over for trial without probable cause, absent any filing of a complaint, thus violating Petitioner's state and federal constitutional right to due process. However, it is well-established that habeas relief may not be based upon perceived error of state law. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

Here, since Claims VII and VIII concern state law, they are not cognizable upon federal habeas review. Furthermore, to the extent that the claim of lack of subject matter jurisdiction may implicate Petitioner's federal constitutional rights, it is entirely without merit, as the Berrien County Circuit Court denied Petitioner's motion to dismiss for lack of subject matter jurisdiction. Accordingly, even if Petitioner could establish cause for the procedural default, the procedural default of the two claims still cannot be excused because Petitioner has failed to establish the requisite prejudice.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 8, 2011